## MARY BRADLEY v. CHARLES J. BECKER, Appellant.

### In Banc, December 30, 1922.

1. **NEGLIGENCE: Rate of Speed: Allegation and Instruction: Enlarging Issues: Videlicet.** Where the petition alleged that "the said automobile truck was operated at a high and dangerous speed, to-wit, twenty-five miles per hour," an instruction authorizing a finding for plaintiff if it was found from the evidence that the "truck was operated at a high and dangerous speed" does not broaden the issues. The essence of the allegation is that the truck was being run at a high, dangerous and negligent speed, and the *videlicet* does not render that material which is immaterial, but its effect and object are to mark that the plaintiff will not undertake to prove the exact fact. [Disapproving Hoagland v. Dunham, 186 S. W. 1. c. 1148, and Davis v. K. C. Rys. Co., 199 Mo. App. 621, and distinguishing Moore v. Street Ry. Co., 142 Mo. App. 292.]

2. ———: **Automobile: Failure to Sound Horn: Ground of Recovery.** There is no rule of law that makes the testimony of a witness for defendant binding on plaintiff upon an issue as to which the evidence is contradictory. Where the driver of the limousine in

Bradley v. Becker.

which plaintiff was riding had testified, as a witness for defendant, that he heard no horn, and also that he saw the truck which collided with the limousine at such a distance that he could have stopped in ample time to have allowed the truck to pass in front of him, and there is other testimony that he could not have seen the truck in time to have avoided the collision, it was not error to submit the failure to sound the horn on the truck as a ground of recovery.

3. ———: Absence of Defendant from Place of Accident: Negligence of Servant. It is proper to treat the negligence of defendant's servant as defendant's negligence, and an instruction which makes defendant chargeable with the actionable negligence of his servant does not mislead the jury. Although there was no evidence that defendant was present at the scene of the accident or was driving or riding in the truck which collided with plaintiff's automobile, an instruction telling the jury that "if defendant, by and through his agent and servant, caused or permitted a truck owner by defendant to collide with said limousine, and if you further find that said defendant, his agent and servant, was guilty of negligence, in that said defendant, his agent or servant, attempted to proceed across said Gravois Avenue, when by turning to either the right or left after he saw or by the exercise of ordinary care would have seen the said limousine in a position of eminent danger he could have avoided said collision," etc., was not error.

4. ———: Numerous Defendants: Instruction: Requiring Plaintiff to Prove All Negligent. An instruction for one defendant telling the jury that "the fact that plaintiff was injured is, in itself, no evidence of any negligence on the part of the defendant Becker, but, on the contrary, the plaintiff must, by her evidence, show that said defendant was guilty of negligence," was obviously erroneous, particularly so by the use of the words "by her evidence," where the two defendants were active adversaries, and each offered evidence to show that the other was negligent.

5. ———: New Trial Granted: Appeal: Erroneous Instruction: No Exception. Notwithstanding an erroneous instruction was given for defendant, who, upon the granting of a motion for a new trial on other grounds, appeals, the Supreme Court does not rule that the order granting the motion for a new trial will be sustained because of the giving of such erroneous instruction, where no exception to the giving of the instruction was preserved in a bill of exceptions filed by appellant, or in a separate bill filed by respondent. But the power of the trial court to grant a new trial on account of an erroneous ruling, whether excepted to or not,

is one thing; and the power of the appellate court to consider a ruling, not specified by the trial court and to which no exception was saved, in order to sustain an order for a new trial not otherwise sustainable, is another and different thing.

Appeal from St. Louis City Circuit Court.—*Hon. Moses Hartman, Judge.*

AFFIRMED AND REMANDED.

*Kelley, Starke & Moser* for appellant.

The court erred in granting a new trial on account of the refusal of Instruction C, requested by plaintiff. Said instruction was properly refused for the following reasons: (a) In the petition it was alleged that the defendant Becker was guilty of negligence causing the plaintiff's injury in the following particulars, to-wit: "that said automobile truck was operated at a high and dangerous rate of speed, to-wit: 25 miles per hour," etc. Notwithstanding the fact that the plaintiff in her petition fixed the exact rate of speed at which she said defendant's truck was being operated, the instruction permitted recovery against said defendant, if the automobile truck was operated at a high and dangerous rate of speed, (entirely ignoring the rate of speed set forth in the petition as constituting a high and dangerous speed). The instruction was, therefore, broader than the petition, and hence it was properly refused. Hoagland v. Dunham, 186 S. W. 1145; Moore v. Street Ry. Co., 142 Mo. App. 290. It has long been the law in this State that instructions which broaden the issues made by the pleadings should be refused. State ex rel. v. Ellison, 176 S. W. 12; State ex rel. v. Ellison, 270 Mo. 645, 653; Degonia v. Railroad, 220 Mo. 589; Mansur v. Botts, 80 Mo. 658; Bank v. Murdock, 62 Mo. 70; Beave v. Transit Co., 211 Mo. 361; Roscoe v. Street Ry. Co., 212 Mo. 576; Hales v. Raines, 162 Mo. App. 46; Young v. Wolf, 190 Mo. App. 48; Milderig v. Railroad, 116 Mo. App. 655; Miller v.

Railroad, 155 Mo. App. 528. (b) The instruction offered was erroneous for the further reason that it submitted failure of the truck driver to sound the horn as a ground of recovery, when the evidence clearly showed it was not a proximate cause of the collision, for the driver of the limousine admitted he saw the Ford truck in ample time to stop and thereby avoid a collision. Failure to sound the horn was, therefore, of no importance. Peterson v. United Rys. Co., 270 Mo. 67, 75; Murray v. Transit Co., 176 Mo. 189; Heintz v. Transit Co., 110 Mo. App. 671; Hutchinson v. Mo. Pac. Ry. Co., 161 Mo. 246. (c) Another error in the instruction was that it submitted the question of defendant Becker's own negligence in handling the truck as well as that of his chauffeur, although there was no evidence that Becker was present. The court was not obliged to correct said instruction "C" offered by plaintiff. If it was not properly worded, it was not error to refuse it. McCloskey v. Pulitzer Pub. Co., 152 Mo. 348; Lail & Hull v. Pac. Express Co., 81 Mo. App. 235; Barth v. Elevator Ry. Co., 142 Mo. 556; Willis v. Miller, 189 Mo. App. 325; Sowders v. Railroads, 127 Mo. App. 128; Jenkins v. Clopton, 141 Mo. App. 96; Morgan v. Mulhall, 214 Mo. 462.

*C. J. Anderson* and *Earl M. Pirkey* for respondent.

(1) The appellate court may properly affirm an order for a new trial for errors which would probably not have been sufficient to secure a reversal had the motion for a new trial been overruled. To warrant reversal of an order for a new trial it must clearly appear that no error occurred that may possibly have been prejudicial to the party who applied for a new trial. Ittner v. Hughes, 133 Mo. 692; Bunyan v. Citizens Ry. Co., 127 Mo. 22. (2) The order granting a new trial will not be reversed if it can be sustained upon any ground of the motion for new trial, even though not sustainable upon the ground specified of record. State ex rel. v. Thomas,

245 Mo. 73; Chandler v. Gloyd, 217 Mo. 406. (3) An instruction telling the jury that the fact of injury is in itself no evidence of negligence is erroneous and the giving of appellant Becker's Instruction 7 which did this was reversible error. Orris v. Ry. Co., 279 Mo. 10. (4) Becker's Instruction 15 was erroneous because it omitted the word "other." Keeline v. Sealy, 257 Mo. 527.

JAMES T. BLAIR, J.—Respondent was injured when an automobile in which she was riding came into collision with an automobile truck owned by appellant. She sued appellant, the Mayer Undertaking Company and The Reliable Auto Livery Company. The petition alleged the two last owned and were operating the automobile in which respondent was riding when hurt. With respect to appellant the petition alleged that the collision was caused by his negligence in that (1) "the said automobile truck was operated at a high and dangerous speed, to-wit, twenty-five miles per hour, at a time and place where said defendant knew, or by the exercise of ordinary care would have known, that vehicles and pedestrians were likely to pass said intersection on said Gravois Avenue; and (2) by and through the carelessness and negligence of said defendant, Charles J. Becker, his agent and servant, in his failure to sound any horn or give any other warning of his approach to said Gravois Avenue, and (3) by and through the carelessness and negligence of said defendant, Charles J. Becker, his agent and servant in attempting to proceed across said Gravois Avenue, when by turning either to the right or left, after he saw, or by the exercise of ordinary care would have seen, the said limousine in a position of imminent danger, he could have avoided said collision," and (4) in failing to stop after seeing the limousine in a position of imminent danger, and (5) in so operating the truck as to let his foot slip from its clutch while approaching Gravois Avenue. The several defendants filed general denials as answers. At the close of the trial appellant took an

involuntary nonsuit as to The Reliable Auto Livery Company; the jury returned a verdict against the Mayer Undertaking Company for $1500, and a verdict in favor of appellant Becker. The trial court sustained respondent's motion to set aside the nonsuit against The Reliable Auto Livery Company, sustained the Mayer Undertaking Company's motion for new trial, and sustained respondent's motion for a new trial as against appellant Becker. It is from this last order that the appeal is taken.

The collision occurred at the intersection of Gravois Avenue and Chippewa Street. The limousine in which respondent was riding was traveling northeastwardly along the east side of Gravois Avenue, and the Ford truck was proceeding westwardly on Chippewa. The evidence discloses the situation at the time at the junction of the two streets, and there is the usual conflict with respect to rates of speed, distances, etc. The ground which the trial court gave for sustaining the motion for new trial against Becker is that it erred in refusing an instruction asked by respondent. In his original brief appellant confined himself to the question whether the reason the court gave for its action was sound. In her brief respondent brought forward other reasons which she contends justify the order for a new trial. Several questions are presented.

I.    The instruction which the court refused and upon the refusal of which, as error, it expressly founded its order granting a new trial, reads as follows:

"The court instructs the jury that if you believe and find from the evidence that on or about the 14th day of November, 1918, plaintiff was riding in a limousine mentioned in the evidence, on Gravois Avenue, at or near its intersection with Chippewa Street in the city of St. Louis, Missouri, defendant Charles J. Becker, by and through his agent and servant, caused or permitted an automobile truck owned by said defendant Becker to collide with

the said limousine, and if you further believe and find
from the evidence that said defendant Becker, his agent
and servant, was guilty of negligence in any one or more
of the following particulars and that such negligence of
said defendant, his agent or servant, contributed to
cause such collision, that is to say:

"That said automobile truck was operated at a high
and dangerous speed while approaching and attempting
to cross a public street, or that said defendant failed to
sound any horn or to give any other warning of his ap-
proach to said Gravois Avenue; or that said defendant
Becker, his agent or servant, attempted to proceed across
said Gravois Avenue, when by turning either to the
right or left after he saw or by the exercise of ordinary
care would have seen the said limousine in a position of
imminent danger he could have avoided said collision
(if you believe that by the exercise of ordinary care he
could have seen said limousine in time to have avoid-
ed said collision), or in his failure to stop said automobile
truck after seeing said limousine in a position of im-
minent danger (if you believe that by the exercise of due
care on the part of the said defendant Becker, his agent
and servant, the said automobile truck could have been
stopped before said collision occurred), then if the jury
so find your verdict must be in favor of said plaintiff
and against said defendant Charles J. Becker."

1. Appellant's first contention is that in authoriz-
ing a finding for respondent if it was found that the truck
"was operated at a high and dangerous speed while ap-
proaching and attempting to cross a public street," the
instruction broadened the issues, since it permitted a
finding for respondent on this ground
on a finding of a less speed than twenty-
five miles per hour, which is the rate
alleged in the petition; that the instruction proceeds
without reference to whether the truck was going twenty-
five miles per hour, as charged in the petition, and is,

Broadening Issues:
Videlicet.

therefore, bad, and was properly refused as broadening and enlarging the charge of negligence as to the rate of speed charged in the petition. Appellant cites decisions announcing the general rule that the issues cannot be enlarged by the instructions and relies especially upon decisions of the Court of Appeals. Moore v. Street Ry. Co., 142 Mo. App. 292 et seq., is cited. In that case two grounds of negligence were expressly alleged; operation of the car (1) at a rate of speed in violation of a rule of the company, and (2) at a rate violative of an ordinance. These were abandoned, and plaintiff contended that by the rejection of certain matter as surplusage there remained a charge of common law negligence. The court agreed this was true and held that, after rejecting all reference to the rule and ordinance, there remained this language: "That said rate of fifteen miles per hour, at which rate said car which so struck said child was moving at that time, was an unreasonable, highly dangerous and negligent rate of speed." The court construed this to mean "not less than fifteen miles per hour." It was then said that "proof of substantially less speed than fifteen miles per hour does not sustain the petition. For the substance and intent of the charge of negligence is not merely that the car was being run, but that it was being run at fifteen miles an hour. That is to say, it was necessary to attain as much as that rate of speed before it would become a negligent rate." No case was cited in support of this which presented any state of facts resembling those in the case in which the decision was being made. The cited cases merely announce the principle that instructions cannot broaden the issues made by the pleadings. It was, in effect, assumed that the pleading so made the issue that proof of a speed of at least fifteen miles an hour was essential to a recovery. In Hoagland v. Dunham, 186 S. W. 1. c. 1148, the Moore Case is followed and the rule applied to a case in which the petition alleged that defendant "carelessly and negligently ran said car which killed said child at an unreasonable, highly

dangerous and negligent rate of speed, to-wit, in excess of twelve miles per hour, as provided in Section No. 676, c. 14, of the Kansas City Charter for the year 1900." The case adds nothing to the decision in the Moore Case by way of discussion. It takes no note of the difference in the two allegations and involves the same assumption as was made in the Moore Case. There was no evidence of an ordinance, and that part of the allegation referring to one seems to have been rejected, *sub silentio,* except insofar as it stated a specific rate of speed. In Davis v. K. C. Rys. Co., 199 Mo. App. 621, the same court followed the Moore and Hoagland rule, but held that the error discovered by the light of those decisions was cured by another instruction given for defendant by which a recovery was prohibited unless the jury found the car was moving at the rate stated in the petition or in excess thereof. In that case the rate of speed, as in the Hoagland Case, was alleged under a *videlicet* as it is in this case.

Is it true that the rate of speed, alleged as it is in this case and was in the Hoagland and Davis cases, is required to be proved as a condition precedent to recovery?

It is not denied that if the matter alleged under the *videlicet* is rejected a cause of action is stated by what is left. In Hoagland v. K. C. Rys. Co., 209 S. W. 569, on second appeal it was found that the petition had been amended by striking out the reference to a particular speed, and the judgment was affirmed on evidence and instructions, as far as the point in question is concerned, like those in the case on the first appeal. In the instant case the essence of the allegation is that the truck was being run at a high, dangerous and negligent rate. The particular number of miles per hour is not an essential allegation, and the very office of the *videlicet,* even at common law, is to "mark that the party does not undertake to prove the precise circumstances alleged." [Bouvier's Law Dictionary.] "The effect and object of the *videlicet* is to mark that the party does not undertake to prove the precise fact. [Andrew's Stephen's Pleading

(2 Ed.) p. 381; Brown v. Berry, 47 Ill. l. c. 177; Chicago T. T. Co. v. Young, 118 Ill. App. l. c. 229.] Some of the more technical rules in this connection have no great force under our system of pleading. The *videlicet* does not render material that which is immaterial, and that which is immaterial may, in a case like this, be rejected under the code though it be not repugnant to the precedent matter.

The ruling in the Moore Case is obviously based upon a record somewhat unlike that in this case, while the ruling in the first appeal in the Hoagland Case and in the Davis Case is out of accord with the liberal tendencies of the code and not supported by the applicable common law rule. It should not be followed. The instruction is good as against this first objection made by appellant.

2. It is urged that the instruction is bad because it submitted the failure to sound the horn on the truck as a ground of negligence. It is argued that there is no evidence tending to show a causal connection between the failure to sound the horn and the collision, in that the only purpose in sounding the horn would be to warn "the traveler upon the highway of the approach of a machine; and if the traveler sees it in time to avoid danger, then the fact that a warning was not sounded becomes immaterial." It is insisted that while the driver of the car in which respondent was seated testified he heard no horn, he also testified he saw the truck at a distance such that, under the evidence, he could have stopped the automobile in ample time to have allowed the truck to pass in front of him, and that this brings into operation the rule concerning the purpose of sounding a warning and excludes the failure to sound one as a ground of recovery. The trouble with this argument is that it takes the testimony of the driver of the automobile in which respondent was riding as conclusive against her. The driver was not her witness. While he

Sounding Horn.

testified he saw the truck far enough from the intersection so that he could have checked his speed and avoided the meeting, yet there is no rule which makes this testimony conclusive against respondent. There was testimony that another truck stood near the southeast corner of the street intersection and obstructed vision to some extent. Appellant offered his driver as a witness. His testimony is apparently somewhat self-contradictory. Nevertheless, he did say that he did not see the automobile respondent was in until it was "even with the front wheels of the truck," though he "had been looking all the time." The truck he had in mind was the one referred to above which stood near the corner in Chippewa Street along which the witness was driving. Another circumstance was that when the driver of the limousine carrying respondent was brought up with a sharp question why he did not slow down or stop, if he saw the truck approaching on Chippewa in time to do so, he returned no answer until the question was put three times and then answered apparently flippantly that he didn't "want to burn the rubber on the brakes." Further, his sole effort to avoid the truck was made almost exactly at the point where the truck driver's testimony, as quoted, indicates the two could first see each other. These things constitute substantial evidence upon which the jury could have found that the driver of the limousine did not and could not see the truck from the place from which he testified he did first see it and could not see it until he reached a point where he did not have time to stop or check his speed so as to avoid the collision. It does not appear, as a matter of law, that the limousine driver saw the truck in time, as contended, and, therefore, this second position of appellant must be held untenable.

3. The third objection made to the instruction is that "although there was no evidence tending to show that defendant Becker was present at the scene of the accident or driving or riding in his Ford truck, the court

submitted to the jury the question whether Becker him-
self attempted to proceed across Gravois
Avenue, when by turning to the right or
left he could have avoided the collision, or
by stopping he could have avoided it.'' It is contended
this made the instruction erroneous and therefore re-
quired its refusal. This contention is founded upon the
use in the refused instruction of the form of words ''de-
fendant Becker, his agent or servant,'' in several places.
No authorities are cited. If the agent or servant of
Becker was guilty of actionable negligence, then his neg-
ligence, in the circumstances, was Becker's negligence.
The same form of words has long been used in like in-
structions. Appellant had no such idea of this instruc-
tion at the trial. In fact, he asked and the court gave the
following: ''The court instructs the jury that the fact
that plaintiff was injured is, in itself, no evidence of any
negligence on the part of the *defendant Becker*, but, on
the contrary, the plaintiff must, by her evidence, show
that *said defendant* was guilty of negligence, as defined
in these instructions.'' Whatever might be thought of
other parts of this instruction, it is clear that if appel-
lant's present position is sound, then the requirement
that there must be proof of *Becker's* negligence before
the jury could find for respondent, is error.

Since the negligence of Becker's driver, if any, was
Becker's negligence, the trial court had the right to treat
it so, and there is nothing in the way this would have
been done by the refused instruction which would have
had any tendency to mislead a jury. If, in fact, appel-
lant had desired to make it so clear that no possibility
of mistake could have arisen, he could have asked an
instruction explaining specifically the correct general
language used. This third objection to the refused in-
struction cannot be sustained.

This disposes of all the reasons given by appellant
upon which he relies to show that the instruction was
erroneous and the order granting the new trial, there-
fore, wrong.

*Margin note:* Defendant or Servant.

II. Respondent brings forward the instruction which is quoted under "3" in the preceding paragraph, which was given at appellant's instance, and insists it was erroneous and that the order granting the new trial should be sustained for that reason. The instruction is obviously erroneous. For one thing, it requires that "plaintiff must, *by her evidence,* show that defendant was guilty of negligence." This error was peculiarly harmful in this case. The Mayer Company and appellant were trying to show negligence on the part of each other. They were active adversaries, and there was evidence offered by the Mayer Company tending to show negligence on the part of appellant, and *vice versa,* to some of which reference has already been made. Appellant calls attention to the fact that the record fails to show that an exception was saved to the giving of this instruction. The trial court would have been authorized to grant a new trial on account of the giving of this instruction. He did not do so. If, in fact, no exception was taken by respondent to the giving of the instruction, this, of itself, may have been the reason the court did not found its order on the error in this instruction. It may well have concluded that the absence of the exception disclosed that respondent did not deem the error materially prejudicial, and the court may have concurred in that view. At any rate, it did not specify Instruction 7 as eliciting the order made. If, in fact, there was an exception, respondent could either have secured its incorporation in the bill of exceptions filed by appellant, or, perhaps, could have filed a separate bill in its own behalf. This court has said that either of these things may be done. [State ex rel. v. Thomas, 245 Mo. 65, et seq.] The power of a trial court to grant a new trial on account of any erroneous ruling, whether excepted to or not, is one thing. The power of this court to consider a ruling, not specified by the trial court and to which no exception was saved, in order to sustain an order for new trial not otherwise sustainable, is another and different one. [Green v. Ter-

minal R. R. Assn., 211 Mo. 1. c. 30, 31.]  The statute (Sec. 1512, R. S. 1919) is broad enough to cover this as well as matters brought forward by an appellant.  The decision in Ittner v. Hughes, 133 Mo. 1. c. 692, did not involve the question now under examination in this case.  The language used is to be interpreted, as it was written, in connection with the question to which it was applied in that case. The giving of Instruction 15 for the same reasons, cannot be considered.

III.  For the reasons given in Paragraph I, supra, the order granting a new trial is affirmed and the cause is remanded. *Woodson, CJ., Higbee* and *David E. Blair, JJ.*, concur; *Graves, Elder* and *Walker, JJ.*, dissent.